THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, Cross-Appellant, v. ROBERT W. PRINCE, Defendant-Appellant, Cross-Appellee.

Fifth District   No. 5—87—0840

Opinion filed August 2, 1989.

Daniel M. Kirwan and Janet L. Gandy, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Wayne Morris, State's Attorney, of McLeansboro (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LEWIS delivered the opinion of the court:

Defendant, Robert Prince, was found guilty by a jury of the offenses of armed violence, aggravated battery, obstruction of justice, and the possession of a firearm without the requisite firearm owner's identification card. (Ill. Rev. Stat. 1987, ch. 38, pars. 33A—2, 12—4(b)(1), 31—4(a), 83—2(a).) The circuit court entered judgment on the convictions of armed violence and the possession of a firearm without a firearm owner's identification card, but vacated the convictions for aggravated battery and obstruction of justice. In so doing, the court found that the aggravated battery was the underlying offense for the armed violence charge and that the charge of obstruction of justice was not a proper charge. The court declared a mistrial on the remaining charge, attempted murder, as the jury could not arrive at a unanimous decision on this offense. Subsequently, the court sentenced the defendant to 12 years' imprisonment, to pay a fine of $1,500, and to pay $152 to the Violent Crimes Assistance Fund for the armed violence conviction, and to a concurrent sentence of 364 days' imprisonment for the possession of a firearm without a firearm owner's identification card conviction. The defendant filed a motion for a new trial which was denied by the court. From his convictions and sentences, the defendant appeals. Additionally, the State, after a separate written order was entered by the court vacating the obstruction of justice

conviction, appeals that order.

On appeal, the defendant raises three issues: first, that the filing of additional charges by the State's Attorney after the defendant had withdrawn his guilty plea was indicative of prosecutorial vindictiveness; second, that the separate and cumulative effect of evidentiary errors denied the defendant a fair trial; and third, that the defendant's sentence should be vacated as the circuit court failed to consider in mitigation that the victim had a violent temperament and that the defendant held an unreasonable belief of self-defense and improperly considered as a factor in aggravation that the sentence was necessary to deter others. In addition to these issues, the defendant filed two motions to dismiss the State's appeal of the vacating of the obstruction of justice conviction, both of which were considered with this case at oral arguments. The first motion to dismiss challenged the State's right to appeal this decision and the second motion to dismiss claimed that the State did not timely file its brief for its appeal. We first consider the defendant's appeal.

To address the defendant's issue of prosecutorial vindictiveness, it is necessary to set forth the procedural history of this case. The defendant was originally charged by information with the offenses of attempted murder and aggravated battery. (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4(a), 12—4(b)(1).) Prior to the defendant's trial on these offenses, the State's Attorney sent a letter to defense counsel in which he indicated that he intended to prosecute only the attempted murder charge. On April 20, 1987, this case proceeded to trial before a jury. Three days into the defendant's trial, on April 23, 1987, after the State had rested its case in chief and the defendant had presented his case but before the State presented rebuttal evidence, the defendant initiated plea negotiations and entered a plea of guilty to the lesser offense of aggravated battery, which was accepted by the court. In exchange for the defendant's plea of guilty, the State agreed to dismiss the charge of attempted murder. Shortly thereafter, on May 26, 1987, the defendant filed a petition to withdraw his guilty plea. At the hearing on the petition, the State did not object to the petition but stated that if the defendant believed he had been pressured into his guilty plea, the State would not oppose the withdrawal of his plea. In addition, the State advised the court that at the time of the plea agreement, the prosecutor was unaware of how extensive the defendant's criminal history was and, on that basis, would concur in the withdrawal of the defendant's guilty plea. The court allowed the defendant to withdraw his guilty plea.

On September 10, 1987, the State filed a new information in

which the defendant was charged with attempted murder, aggravated battery, obstruction of justice, and the possession of a firearm without the requisite firearm owner's identification card. (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4(a), 12—4(b)(1), 31—4(a), 83—2(a).) The defendant filed a motion to dismiss the information, contending that the prosecution of these charges was barred by sections 3—3 through 3—8 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, pars. 3—3 through 3—8), that prosecution of the charges of attempted murder and aggravated battery would result in the defendant being subject to double jeopardy for these offenses, and that the instituting of the additional charges of obstruction of justice and of possession of a firearm without a firearm owner's identification card was a punishment for the defendant's exercising of his right to withdraw his guilty plea. The circuit court denied the defendant's motion to dismiss.

On October 5, 1987, the State filed an amended information in which the charge of armed violence was added and the offense of aggravated battery was amended to state "great bodily harm" instead of "bodily harm." (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2.) The State's Attorney also filed an affidavit with the court, stating that he did not file the new information charging the defendant with additional offenses as punishment, but that he instituted the additional charges "on the basis of an evaluation of the defendant's conduct (which this affiant was better prepared to do after reviewing the transcript of the first trial) and the criminal charges that prohibit such conduct." The defendant renewed his motion to dismiss the information after the filing of the amended information, which motion was also denied by the court.

This case went to trial before the second jury on October 20, 1987, and at the close of the evidence, the jury found the defendant guilty of the offenses of armed violence, aggravated battery, obstruction of justice, and possession of a firearm without a firearm owner's identification card. As noted previously, the court entered judgment on the convictions for armed violence and possession of a firearm without a firearm owner's identification card, vacated the convictions for aggravated battery and obstruction of justice, and declared a mistrial as to the charge of attempted murder.

In addition to the foregoing procedural history, a statement of the facts of this case is needed. It should be noted that the evidence presented at the defendant's first trial was essentially identical to evidence presented at the second trial, and since only the evidence presented at the second trial is necessary for this appeal, the facts presented at the first trial need not be set forth here. At trial, Linda

Maurer testified that on July 27 and July 28, 1986, she attended a party at Gary Woolard's home. She arrived at the party at about 11 p.m. with her fiance, Joe Dennis. During the party, Maurer drank three drinks but she denied that she had taken any drugs. When Maurer first saw the defendant at the party, the defendant showed Dennis and herself a gun he had bought. The defendant told them that he brought the gun with him in case someone gave him "trouble."

Shortly after midnight, Maurer saw the defendant and Stanley Walters together arguing. The defendant and Walters were outside between the house and the garage, and were approximately five feet from each other. Although it was night, the area where the defendant and Walters were standing was well lighted. According to Maurer's testimony, Walters was standing still, and although Maurer saw that Walters had a beer in his hands, she did not see Walters throw beer on the defendant. She then saw the defendant pull out his gun and shoot at Walters three times, one of the shots going into the ground and the other two shots being fired at Walters. After the shooting, the defendant kept the gun aimed at Walters and said to Walters, "Don't think I won't shoot you, you m----- f-----." The defendant then walked away. Maurer left the party and went with Walters to the hospital.

Stanley Walters testified that he arrived at Gary Woolard's party with Paul Hauschild at about 10 or 11 a.m. on July 27. That day, Walters drank approximately 30 8-ounce cups of beer, four or five margaritas, and did four or five "lines" of cocaine. A little after midnight, Walters got into an argument with the defendant. Walters told the defendant that he should not go into Gary Woolard's house, but he did not threaten the defendant. He and the defendant exchanged words and Walters turned around towards the defendant. As Walters turned around, the beer he held in his hand went all over Paul Hauschild, but Walters did not think that any of the beer went onto the defendant. After that, the defendant shot Walters twice, once in the chest and once in the neck. Walters stated that he was then taken to the hospital by Joe Dennis.

On cross-examination, Walters testified that he did not use cocaine on a regular basis, and that on the day of the party, he did not do the cocaine in front of anyone. He believed that Paul Hauschild was unaware that Walters had cocaine in his possession, even though Walters had arrived with Hauschild at the party after having travelled together from Chicago, a 5½-hour drive. Walters denied that he still used cocaine.

Greg Dolden testified that he arrived at Gary Woolard's party on July 27, 1986, at about 4 or 5 p.m. Dolden drank approximately six beers at the party, but he did not do any drugs. Dolden's testimony was similar to Maurer's testimony in that shortly after midnight, he saw the defendant and Walters arguing. Dolden stated that he was standing next to the defendant and that Walters was five feet away from the defendant. Dolden did not know what Walters and the defendant were arguing about, but he saw Walters throw a beer which went onto Paul Hauschild. The defendant pulled a silver .25 caliber gun out of his back pocket and fired three shots at Walters. Next, the defendant backed away with the gun still aimed, got into his car, and drove away. After the defendant left, Joe Dennis and Dennis' girlfriend, Linda Maurer, drove Walters to the hospital.

Dolden admitted that he had a prior conviction for aggravated battery in Saline County. He stated that he had received a sentence of two years' probation and a $1,000 fine for this offense. Dolden also testified that Walters was his ex–brother-in-law.

Staci Dolden testified that she worked for the Illinois Department of Corrections. On July 27, 1986, she arrived at Gary Woolard's party at around 4 or 5 p.m. She drank approximately two margaritas and she did not take any drugs at the party. She too witnessed the argument between the defendant and Walters. She heard Walters ask the defendant to leave the party because they didn't want any trouble. This statement precipitated further words between the defendant and Walters. She also saw Walters throw a beer towards the defendant, but she stated that the beer went onto Paul Hauschild. Defendant then pulled out a gun and shot once at the ground and then two times at Walters. The defendant backed away with his gun still pointed, got into his car, and left.

Prior to the shooting, Staci did not see Walters with a weapon, and Walters appeared to her to be calm. She stated that Walters had never been violent around her and that he had always appeared to be mild mannered. It was Staci's recollection that Walters went to the hospital after the defendant left.

Joe Dennis, Walters' cousin, testified that he arrived at Gary Woolard's party at about 11 p.m. on July 27, 1986. He drank three drinks at the party but did not take any drugs. Dennis corroborated Maurer's testimony about the defendant showing them a gun and stating that he brought it to prevent anyone from giving him trouble.

Dennis also witnessed the argument between the defendant and Walters. He could not hear what they were saying but, when he moved closer, he could hear them arguing. He too stated that the

defendant pulled a gun out from his back pocket and that the gun went off towards the ground, but that the defendant raised the gun up and shot twice. Dennis saw nothing in Walters' hands. Dennis did not see Walters throw a beer, but he admitted that a beer might have been thrown and that he did not see it. After the shooting, Dennis and Maurer took Walters to the hospital.

Dr. Elliott Partridge testified that he saw Walters at the emergency room at Ferrell Hospital at approximately 2 a.m. on July 28, 1986. The doctor, after examining Walters' X rays, determined that there were two bullets in Walters. Dr. Partridge stated that Walters advised him that he had done cocaine recently.

Bill Warren, the sheriff of Hamilton County, testified that he was present on July 29, 1986, when Trooper Ceja found a .25 caliber semiautomatic Raven pistol in the North Fork of the Saline River, about one-half mile from Gary Woolard's home. When the gun was found, there were three live rounds of ammunition in the gun. Sheriff Warren admitted that he knew where to look for the gun as the defendant had told him where it was.

State Trooper Thomas Ceja testified that he was a diver for the State police's underwater search and discovery team. On July 29, 1986, he dove in the North Fork of the Saline River south of the bridge in search of a gun. He was directed to dive at this site by the sheriff of Hamilton County. After searching the area for about an hour, Trooper Ceja found a .25 caliber automatic Raven Arms weapon which contained three rounds of ammunition. When he found the gun, the safety was off and the gun was ready to fire.

Deputy Sheriff Greg Brenner stated that he investigated the scene of the shooting. He collected evidence, talked to witnesses, and photographed the area. Deputy Brenner found three spent .25 caliber shell casings at Gary Woolard's residence.

The State's next witness, Donald Gunnell, testified that he was employed as a forensic scientist in firearm and tool mark identification by the Illinois State Police, Southern Illinois Crime Lab. He had examined and had test fired the weapon found by Trooper Ceja. He stated that this weapon held six bullets in the magazine and one shell in the chamber when fully loaded. He explained that to fire the gun, a person must pull the trigger each time.

Gunnell compared his test-fired bullets to the bullet removed from Walters and found that all of the bullets had been fired from the same weapon. Likewise, when he compared the shell casings found at Gary Woolard's home with the discharged casings from his test firing of the weapon, he found that the discharged shell casings found at the scene

had come from the same gun.

Don Prince, the defendant's brother, testified on the defendant's behalf. Don arrived at the defendant's home on July 28, 1986, at approximately 4 a.m., and, at that time, the defendant's home was surrounded by the police. Don talked to the defendant from outside the house and asked the defendant to come out, which the defendant did.

Defendant testified that he went to Gary Woolard's birthday party at about 7 p.m. on July 27, 1986. He explained that he had arranged to meet John Maguire at a bridge at about 2 p.m. that day to show Maguire his .25 caliber semi-automatic Raven pistol, but that he had instead spent the day with his fiancee and her daughter. When the defendant went to the party, he took his gun and six bullets with him. He had loaded the gun and kept it in his right rear pocket, but he denied showing the gun to anyone at the party. The defendant saw Walters at the party and he appeared to the defendant to be getting drunk and "angry looking."

Around midnight, the defendant stated he needed to use the bathroom and opened the back door of Gary Woolard's house to go inside. As he did so, Walters told him that he was not to come into the house, and after Walters heard why the defendant needed to come inside, Walters advised him to use the bathroom in the garage. Defendant went to the garage, and when he opened the door of the bathroom, he saw Paul Hauschild taking cocaine. The defendant closed the door and waited for Hauschild to come out of the bathroom, and then went in himself. Upon coming out of the garage, the defendant saw Hauschild and Walters talking together, and Hauschild was pointing towards the defendant. At that time, Walters approached the defendant and told the defendant that he should leave the party. The defendant agreed to do so and as the defendant walked towards his car, Hauschild came up to him and stopped him. Hauschild motioned to Walters to come over. The defendant became frightened as Hauschild said he was going to make sure that the defendant did not tell anyone about what the defendant had seen in the bathroom. As Walter approached, Walters took his beer and threw it at the defendant and said, "I thought I told you to leave you son-of-a-b---- and b------."

The defendant stated that the beer thrown by Walters went partly onto Paul and that the remainder of it hit him in the face. According to the defendant, Walters told the defendant that he was going to kill him. The defendant, still partially blinded by the beer, reached into his back pocket, pulled out his gun, and fired a shot at the ground to warn Walters. Because Walters came towards him, he fired his gun two more times. He explained that he did not intend to hurt or kill

Walters and that he did not aim the gun, but that he simply wanted to stop Walters. He did not see Walters with a weapon.

The defendant stated that after he shot Walters, Joe Dennis took Walters to his truck and drove away. The defendant backed towards his car with the gun still pointed at people as he knew that Walters had relatives at the party and the defendant feared they would retaliate for the shooting.

The defendant admitted that he stopped at the bridge at the Saline River and threw his gun into the water. He went to his home and about three or four hours later, the police surrounded his home. He did not come out of his house when the police arrived, but he did so approximately an hour and a half later, when his brother asked him to come out. He stated that until that time, no one had asked him to come out. The defendant also admitted that he did not have a firearm owner's identification card for the gun.

The defendant explained that he was afraid of Walters as he was aware of Walters' propensity for violence. The defendant testified to witnessing an incident where Walters, for no apparent reason, struck Jim Thorn at a wedding reception, and after the fight, the defendant took Thorn to the hospital. Thorn required 41 to 46 stitches to repair his lip and 13 or 14 stitches were needed on the back of Thorn's head.

The defendant also testified about an incident between Walters and Rick Price, wherein the defendant saw Walters grab Price and throw him against a counter. The defendant likewise testified to an episode where he witnessed Walters hit Frank Farris in the head with an ashtray when Walters was drunk.

On cross-examination, the defendant was asked if he had taken any drugs at the party. The defendant's answer to this question did not appear in the record at this point; however, on redirect, the defendant denied that he had taken drugs.

John Maguire testified that on July 27, 1986, he was to meet the defendant at a bridge near Gary Woolard's home so that he might shoot the defendant's gun, which he was interested in buying. The defendant did not appear at their designated meeting time of 2 p.m., so Maguire went on to Gary Woolard's party. Maguire arrived at the party at about 2:15 p.m., and when he arrived, he did not see the defendant. Maguire saw Walters several times during that day. When he saw Walters at about 7 or 8 p.m. that evening, in his opinion, Walters was getting "rowdy" and loud. Maguire left the party at around midnight.

Maguire testified that Walters had a reputation for being mean and for hurting people "bad" if Walters had a disagreement with

them. He corroborated the defendant's testimony regarding Walters' fights with Thorn, Price and Farris.

Maguire stated that he had received a threat from Walters about testifying for the defendant. Maguire was told by Walters not to worry about the defendant, but that he "had better worry about myself because I had my own family to worry about." Maguire never filed a complaint against Walters as a result of the threats. Likewise, he never filed a complaint for any of Walters' violent actions.

The defendant completed his case by introducing a battery conviction of Walters into evidence. According to this evidence, Walters was convicted in May, 1987, for a battery against Debra Walters.

In rebuttal, the State presented the testimony of Paul Hauschild. Hauschild testified that he was at Gary Woolard's party on July 27 and July 28, 1986. At the party, he drank approximately 10 beers, two or three margaritas, and he did two "lines" of cocaine.

Between 9 and 10 p.m. on July 27, 1986, the defendant asked Hauschild if he had any cocaine, so Hauschild took the defendant into the bathroom and they both did a "line" of cocaine. Hauschild denied that the defendant came in on him when Hauschild was doing cocaine, but stated that he and the defendant shared the cocaine. While they were in the bathroom, the defendant showed Hauschild his .25 caliber automatic pistol. Hauschild said that the defendant told him he always carried the gun and that "nobody messes with me."

Hauschild was with Walters when Walters and the defendant began arguing. Hauschild had put his arm around Walters and was leading him away when the defendant yelled at Walters. Walters turned around, and as he did so, the beer in Walters' hand went up in the air and came down on Hauschild. At that point, the defendant pulled out his gun and shot three times in Walters' direction. Hauschild stated that none of the beer from Walters' cup went onto the defendant. After the shooting, the defendant told Walters, "I will blow your head off." Walters then left for the hospital, after which the defendant left.

James Cochran testified that he was present at the wedding reception when Walters hit Thorn. He explained that a Ronnie Page had had an argument and was drunk and that Walters took Page outside to calm him down. While they were outside, Thorn came up to Page and Walters and started arguing with Page. Walters told Thorn to leave them alone. When it appeared that Thorn was going to strike Walters, Walters hit Thorn in the face. Joe Roby, the next witness called by the State, corroborated Cochran's testimony.

In surrebuttal, the defendant called Jack Nolan, an officer with the Illinois State Police, Division of Criminal Investigations, to testify.

Nolan stated that he interviewed the defendant on July 28, 1986, at about 7:30 a.m. He found the defendant cooperative and he admitted that the defendant told him where the gun that he used to shoot Walters was to be found. The defendant told Nolan that he had been at a "booze" party and that he had drunk alcohol, but that he had not taken any drugs. The defendant offered to take a breath test or any other test the officer deemed necessary. Nolan did not administer any test to the defendant as he concluded that a time span of six or seven hours had transpired and it would not be beneficial to test the defendant.

After considering this evidence, the jury found the defendant guilty of armed violence, aggravated battery, obstruction of justice and possession of a firearm without a firearm owner's identification card. The court subsequently entered judgment on the convictions of armed violence and for possession of a firearm without a firearm owner's identification card.

We now consider the defendant's issues raised on appeal. Defendant's first contention is that the prosecutor's filing of additional and more serious charges against the defendant after the withdrawal of his guilty plea to aggravated battery evidenced prosecutorial vindictiveness and violated his due process rights. The State contends that the defendant has waived this issue as he failed to include it in his post-trial motion. We agree.

■ In the case *sub judice*, the defendant filed a post-trial motion, but in his motion he failed to allege the error he now raises on appeal. One paragraph of his motion stated as follows:

> "That the Court errored [*sic*] in allowing the State to add in new charges, to wit, the charges of Armed Violence, Obstructing Justice and Failure to have a Firearm Permit. That the filing of these new charges was in violation of Section 3—3 of the Illinois Criminal Code [*sic*]. That the Defendant raises each and every objection to the filing of these new charges as found in the similar case of *People v. Lewis* 112 Ill. App. 3d 626, 445 N.E.2d 916, 68 Ill. Dec. 272, a copy of which citation is attached hereto and made a part hereof."

A review of *Lewis* reveals that in that case, the defendant was brought to trial for the offenses of attempted murder, aggravated battery (with a deadly weapon), and armed violence (predicated on the offense of aggravated battery). At trial, the jury found the defendant not guilty of attempted murder but was unable to reach a verdict on the aggravated battery and the armed violence charges, so the court declared a mistrial on those two offenses. Before retrying the defend-

ant, the State amended its information and added additional charges not brought before the first trial. The *Lewis* court found that only the conviction of the remaining charge on which the mistrial was originally declared could stand and that the new charges, which could have been brought before the original trial, were not proper. The arguments in *Lewis* centered on sections 3—3 and 3—4 of the Criminal Code of 1961 and did not raise the contention of prosecutorial vindictiveness, so the reference to *Lewis* did not preserve this issue. (Ill. Rev. Stat. 1983, ch. 38, pars. 3—3, 3—4.) Likewise, the defendant's broad allegations in his post-trial motion, that he did not have a transcript of the trial at the time he prepared his post-trial motion and that "[h]e, therefore, includes in this Motion, all further errors *** of the Defendant's fair trial, due process, and other constitutional rights" contained in the record, were insufficient to preserve the issue for review. (See *People v. Collins* (1984), 127 Ill. App. 3d 236, 468 N.E.2d 1343.) Thus, the defendant in this case did not raise this issue in his post-trial motion, and therefore, unless this issue comes within an exception, he has waived it. *People v. Friesland* (1985), 109 Ill. 2d 369, 488 N.E.2d 261.

█▊ █ The exception to the waiver rule can be found in Supreme Court Rule 615(a). (107 Ill. 2d R. 615(a).) Under this rule, plain errors can be considered even though not preserved; however, this exception is usually applied in those cases where the evidence is closely balanced. (*Collins*, 127 Ill. App. 3d 236, 468 N.E.2d 1343.) Here, eyewitness testimony and the defendant's testimony lead inescapably and overwhelmingly to the conclusion that the defendant had committed the offenses of which he was convicted.

Moreover, we do not determine that there was prosecutorial vindictiveness present in this case. Defendant contends that because he pleaded guilty to the aggravated battery charge, this was tantamount to a conviction of that charge. When the prosecutor reinstated the attempted murder charge and added the armed violence charge, the defendant argues that these charges were additional and more serious charges than those of which he was convicted, and that this was evidence of prosecutorial vindictiveness. Defendant argues that his case is similar to *Blackledge v. Perry* (1974), 417 U.S. 21, 40 L. Ed. 2d 628, 94 S. Ct. 2098, and *North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072, wherein the United States Supreme Court held that there is a presumption of prosecutorial vindictiveness where a prosecutor brings additional and more serious charges against a defendant after he has been convicted of an offense and has overturned his conviction, thereby subjecting a defendant to

greater sanctions for pursuing a statutory or constitutional right. We disagree.

We find that the defendant's case is more analogous to *United States v. Goodwin* (1982), 457 U.S. 368, 73 L. Ed. 2d 74, 102 S. Ct. 2485. In *Goodwin*, the prosecutor brought additional charges against the defendant after unsuccessful plea negotiations. The Supreme Court held that there is no presumption of prosecutorial vindictiveness under those circumstances, and stated:

> "In declining to apply a presumption of vindictiveness, the Court recognized that 'additional' charges obtained by a prosecutor could not necessarily be characterized as an impermissible 'penalty.' Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation—in often what is clearly a 'benefit' to the defendant—changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial 'vindictiveness.' *** For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.
>
> ***
>
> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance." (*Goodwin*, 457 U.S. at 378-81, 73 L. Ed. 2d at 84-85, 102 S. Ct. at 2492.)

The Supreme Court went on to add:

> "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." (*Goodwin*, 457 U.S. at 382, 73 L. Ed. 2d at 86, 102 S. Ct. at 2493.)

In the instant case, the initial trial of the defendant for the offense of attempted murder was never completed and no conviction ensued. The defendant's plea of guilty to aggravated battery would have constituted a conviction had the defendant not had a change of heart. However, once the defendant withdrew from his bargain, the State was not locked into the aggravated battery charge only, but the slate

was wiped clean and the State and the defendant were placed in the same position as before the initial trial and before the guilty plea, for to hold otherwise would not permit the flexibility that is essential to carry out the policy considerations inherent in plea negotiations. (See *People v. McCutcheon* (1977), 68 Ill. 2d 101, 368 N.E.2d 886.) Further, since a prosecutor is permitted to amend an information at any time prior to trial, providing it does not result in prejudice to the defendant, the prosecutor in this case was within the law in charging the defendant with additional charges prior to trial.

It should also be noted that in this case, the defendant was not charged in the new information with a more serious offense than he was originally charged, and since attempted murder and armed violence are the same class of offenses, they are subject to the same sentence being imposed. In this case a sentence was never imposed against the defendant during any proceeding, and the defendant was never exposed to the possibility of a larger sentence being imposed than was possible under his original charged offense of attempted murder. We find that there is no presumption of prosecutorial vindictiveness raised here or is there evidence of actual vindictiveness, and that the defendant was not deprived of his due process rights. This decision is in accord with the recent United States Supreme Court's ruling in *Alabama v. Smith* (1989), 490 U.S. ___, 104 L. Ed. 2d 865, 109 S. Ct. 2201.

The defendant's second issue consists of three evidentiary errors which arose at trial and which the defendant contends alone and cumulatively deprived him of a fair trial. The three errors raised by the defendant are: (1) that the circuit court erred when it denied the defendant the opportunity to cross-examine a State's witness regarding his pending charge of aggravated battery in another county; (2) that the court erred in restricting the defendant's evidence of the victim's propensity for violence as this evidence was relevant to the defendant's claim of self-defense; and (3) that the court improperly allowed the State to impeach the defendant as to his use of cocaine on the night of the offense, as this was evidence of a specific prior bad act which was unrelated to a material issue at trial and which unduly prejudiced the defendant.

With regard to the first evidentiary error raised by the defendant, the defendant argues that he should have been permitted to question Greg Dolden, a State's witness, about an aggravated battery charge pending in another county as this testimony would have impeached Dolden by showing his possible bias or motive to testify falsely. We do not find that the circuit court's granting of the State's motion to re-

strict questioning on this topic error. Dolden testified that he had one conviction for aggravated battery. The charge on which the defendant desired to question Dolden was not on this conviction but on another pending charge in another county.

■■ ■ Testimony of an arrest is not to be used to impeach generally, but may be used when it reasonably tends to show that the testimony would be influenced by interest, bias or motive to testify falsely. (*People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9.) However, when an arrest is used in such a manner, the evidence must support the inference that the witness has something to gain or lose by his testimony; therefore, the evidence must not be remote or uncertain. (*Triplett*, 108 Ill. 2d 463, 485 N.E.2d 9.) Here, Dolden's testimony was not the only testimony upon which the defendant's conviction rested and Dolden's testimony corresponded substantially with the testimony of other eyewitnesses. It is entirely speculative that the evidence of Dolden's pending aggravated battery charge in another county would have supported the inference that he had anything to gain by testifying falsely at the defendant's trial. Additionally, the defendant failed to make an offer of proof of this issue. (*People v. Washington* (1984), 121 Ill. App. 3d 479, 459 N.E.2d 1029.) Further, the evidence against the defendant was overwhelming and any error in this regard was harmless beyond a reasonable doubt. (*People v. Johnson* (1987), 116 Ill. 2d 13, 506 N.E.2d 563.) We also note that the asserted error was not raised in the defendant's post-trial motion, and under these circumstances, it was waived. *People v. Castiglione* (1986), 150 Ill. App. 3d 459, 501 N.E.2d 923.

■■ Defendant's second contention of evidentiary error, that he was restricted in presenting evidence of the victim's propensity for violence, is likewise meritless. The defendant, at trial, testified to three instances which he had witnessed where Walters had committed acts of violence. The testimony was corroborated by Maguire. The defendant also presented evidence of a battery conviction of the victim. The evidence not allowed by the court was of two instances of violence by the victim which had not been witnessed by the defendant or by Maguire. We find that the court did not err in excluding this evidence. The evidence at trial was clearly overwhelming that the defendant did not act in self-defense and the jury so found, and the additional testimony of the victim's propensity for violence would have been unnecessarily cumulative. Likewise, as with the previous evidentiary error raised by the defendant, he failed to include this alleged error in his post-trial motion; therefore, it is waived. *Friesland*, 109 Ill. 2d 369, 488 N.E.2d 261.

■ The defendant's last contention of evidentiary error is that he was improperly impeached by the State's inquiry into his use of cocaine on the evening of the incident as this constituted evidence of a prior bad act unrelated to a material issue. We disagree. On direct examination, the defendant testified that he had witnessed Hauschild taking cocaine in the bathroom in the garage. The defendant's theory of self-defense rested partially on his testimony that Hauschild had approached him as he was leaving the party to inform the defendant that he should not speak about what he had seen, and, according to the defendant, to insure this, Hauschild called Walters over to them. This testimony by the defendant entitled the State to inquire into whether he had taken drugs that evening, as the fact that the defendant had taken cocaine with Hauschild, which Hauschild testified to on rebuttal, negated the defendant's testimony that Walters approached him in order to insure that the defendant did not talk about seeing Hauschild take cocaine. If the defendant had taken cocaine also, then Hauschild would have no reason to be concerned about the defendant telling anyone about Hauschild's taking of cocaine and the defendant's credibility was diminished. The State had the right to cross-examine the defendant concerning any matter which would explain, modify or discredit what the defendant said on direct examination. (*People v. Strother* (1972), 53 Ill. 2d 95, 290 N.E.2d 201.) The fact that the defendant was prejudiced by this testimony did not make it error, for it would be a greater denial of a right of both parties if we were to restrict cross-examination, thereby denying a substantial right and withdrawing one of the safeguards essential to a fair trial. (See *People v. Garrett* (1976), 44 Ill. App. 3d 429, 358 N.E.2d 364.) Therefore, we find that the State's inquiry into the use of cocaine by the defendant was not improper impeachment. We also note that as there was no error in any of the separate evidentiary rulings raised by the defendant, that there likewise was no cumulative error depriving him of a fair trial.

■ ■ The defendant's last issue raised on appeal is that his sentence of 12 years' imprisonment was erroneous as the court failed to consider in mitigation that the victim had a violent temperament and that the defendant held the unreasonable belief that self-defense was necessary to protect himself, and that the court improperly considered in aggravation that this sentence was necessary to deter others. Generally, the imposition of a sentence is a matter within the discretion of the circuit court, and, absent an abuse of discretion, a sentence imposed by the court will not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) At the defendant's sen-

tencing hearing, the trial judge stated that he had considered the presentence report and the evidence presented at trial. The judge also noted that the defendant's conduct had caused serious harm as the victim was almost dead by the time he reached the hospital and that the victim's injuries had caused him to remain in the hospital for over a month. The judge stated that the defendant had a history of criminal activity, which showed that the defendant lacked felony convictions; nevertheless, the history revealed that there were battery convictions. Additionally, the judge found that the court's sentence was necessary to deter others. In considering factors in mitigation, the judge stated he had considered the evidence presented and found that no factors in mitigation applied in this case. Based on these statements by the judge, it is presumed that he properly considered the factors in mitigation and the factors in aggravation presented at the sentence hearing and during trial. (*People v. Taylor* (1985), 139 Ill. App. 3d 779, 487 N.E.2d 767.) The sentence imposed by the court was for 12 years' imprisonment, a sentence within the range authorized for the offense of armed violence, a Class X felony. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3).) We find that the circuit court did not abuse its discretion when it imposed a 12-year sentence upon the defendant.

Our last consideration is the State's cross-appeal. The State contends that the circuit court erred in vacating the defendant's conviction for obstruction of justice and that if this court would reverse and remand the defendant's other convictions on appeal, that upon remand, it should have the opportunity to retry the defendant on the obstruction of justice charge. The defendant has filed two motions to dismiss the State's cross-appeal. Given our disposition of this case, it is unnecessary to consider the State's cross-appeal. Further, we have reviewed the evidence in this case and find that the circuit court properly vacated the conviction.

For the foregoing reasons, we affirm the judgment of the circuit court of Hamilton County.

Affirmed.

GOLDENHERSH and HOWERTON, JJ., concur.